UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 11-60839-Civ-COOKE/TURNOFF

EVERGLADES ECOLODGE AT
BIG CYPRESS, LLC,

    Plaintiff
vs.

SEMINOLE TRIBE OF FLORIDA,

    Defendants.
_____/

## ORDER DENYING MOTION TO REMAND AND GRANTING MOTION TO DISMISS

THIS MATTER is before me on Defendant Seminole Tribe of Florida's Motion to Dismiss (ECF No. 6), and Plaintiff Everglades Ecolodge at Big Cypress, LLC's Motion to Remand (ECF No. 16). I have reviewed the record, the arguments and the relevant legal authorities, and find that this Court has original jurisdiction over the dispute, but that the Complaint fails to state a cause of action. Therefore, for the reasons explained below, the Motion to Remand is denied, and the Motion to Dismiss is granted.

### BACKGROUND

The Seminole Tribe of Florida (the "Tribe") is a federally recognized Indian tribe occupying a reservation in South Florida. In or about 2006, Plaintiff Everglades Ecolodge at Big Cypress, LLC ("Everglades") began working on the concept of developing a full service resort style ecolodge. The facility was to be developed on a fifteen-acre parcel of leased land on the Big Cypress Seminole Indian Reservation. Beginning in June 2006, Everglades made several presentations to the Tribe council and tribal committees to promote the development of the facility and to discuss marketing programs. Everglades negotiated the terms of the restricted

land lease with the Tribe from February 2007 to November 2008. On November 28, 2008, the parties executed a 25-year business lease to facilitate the development of the ecolodge (the "Lease"). Through the Lease, Everglades intended to bring eco-tourism, i.e., hotels, retail concessions, educational programs, and ecologically related entertainment, to the Big Cypress Seminole Indian Reservation. The proposed land development and construction detailed a 62,435 square foot full service ecolodge resort, which was to include villas, a conference center, meeting facilities, and a wellness center. In January 2009, Everglades began the National Environmental Policy Act ("NEPA") approval process to ensure compliance with the NEPA Policy Manual of the United States Department of Interior, Bureau of Indian Affairs. In July 2009, Everglades retained experts to conduct traffic, environmental, water and wastewater studies, among others. The NEPA environmental assessment took approximately one year to complete, and in July 2010, Everglades submitted the environmental reports to the Seminole Tribe Environmental Department.

Everglades claims that the Tribe council passed a resolution on October 21, 2010, which effectively rescinded the Lease without notice to Everglades. On March 30, 2011, Everglades initiated this action against the Tribe in the Seventeenth Judicial Circuit Court in and for Broward County, Florida for breach of contract/lease (Count I), or in the alternative, specific performance (Count II). On April 19, 2011, the Tribe removed the action to this Court pursuant to 28 U.S.C. § 1441, asserting that federal jurisdiction is proper because Everglades' claims necessarily involve substantial questions of federal law arising under 28 U.S.C. § 1331. Everglades and the Tribe now make procedural and substantive challenges to this Court's jurisdiction. Everglades contends that removal was procedurally improper while the Tribe argues that the Court lacks subject matter jurisdiction and that the complaint fails to state a valid

cause of action.

## DISCUSSION

### A. Federal Question Jurisdiction

A defendant may remove an action to a United States district court if that court has original jurisdiction over the action. 28 U.S.C. § 1441(a). A federal district court has original jurisdiction over diversity cases and over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. §§ 1331, 1332. The burden of establishing federal jurisdiction falls on the party who is attempting to invoke the jurisdiction of the federal court. *See McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936).[1] The parties do not dispute the lack of diversity between them. Therefore, the sole issue is whether this case arises under federal law pursuant to 28 U.S.C. § 1331.

Not every claim "arising under" federal law will invoke federal question jurisdiction. A case arises under federal law when a federal question is presented on the face of the complaint. *Kemp v. Int'l Bus. Mach. Corp.*, 109 F.3d 708, 712 (11th Cir. 1997) (citing *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 11 (1983)). This "well-pleaded complaint" rule "directs our focus to the terms of the complaint as the plaintiff chooses to frame it." *Id*. "If the plaintiff elects to bring only state law causes of action in state court, no federal question will appear in the complaint that could satisfy the well-pleaded complaint rule, and the case may not be removed to federal court." *Id*. (citing 13B Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3566 (1984)).

---

[1] Courts should strictly construe the requirements of 28 U.S.C. § 1441 (removal jurisdiction) and remand all cases in which such jurisdiction is doubtful. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 109 (1941). Moreover, the removal statutes are construed narrowly, and when the plaintiff and defendant clash on the issue of jurisdiction, uncertainties are resolved in favor of remand. *See Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994).

There are two exceptions to the well-pleaded complaint rule. First, a federal court has jurisdiction when "some substantial, disputed question of federal law is a necessary element of one of the well-pleaded state claims." *Franchise Tax Bd.*, 463 U.S. at 13. "The fact that a court must apply federal law to a plaintiff's claims or construe federal law to determine whether the plaintiff is entitled to relief will not confer federal subject matter jurisdiction – the implicated federal issue must be substantial." *Dunlap v. G&L Holding Grp., Inc.*, 381 F.3d 1285, 1291-92 (11th Cir. 2004). The second exception grants federal jurisdiction when a plaintiff's state law claims are completely preempted by federal law. *See, e.g., Ehlen Floor Covering, Inc. v. Lamb*, 660 F.3d 1283, 1287 (11th Cir. 2011). "When the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003). "Such 'complete preemption' will convert state law claims into federal claims for the purposes of the well-pleaded complaint rule, allowing a defendant to remove the case to federal court." *Kemp*, 109 F.3d at 712.

### 1. *Substantial and Disputed Issue of Federal Law*

The Tribe asserts that this Court has original jurisdiction because the Court must interpret, apply and adhere to the federal procedural regulations that govern the Lease. The Indian Long-Term Leasing Act ("ILTLA"), 25 U.S.C. § 415, governs the terms, conditions and validity of all leases involving Indian lands.

> Any restricted Indian lands, whether tribally, or individually owned, may be leased by the Indian owners, with the approval of the Secretary of the Interior, for public, religious, educational, recreational, residential, or business purposes … Prior to approval of any lease or extension of an existing lease pursuant to this section, the Secretary of the Interior shall first satisfy himself that adequate consideration has been given to the relationship between the use of the leased lands and the use of neighboring lands; the height, quality, and safety of any structures or other facilities to be constructed on such lands; the availability of

4

>police and fire protection and other services; the availability of judicial forums for all criminal and civil causes arising on the leased lands; and the effect on the environment of the uses to which the leased lands will be subject.

25 U.S.C. § 415(a). "No agreement or contract with an Indian tribe that encumbers Indian lands for a period of 7 years or more shall be valid unless that agreement or contract bears the approval of the Secretary of the Interior or a designee of the Secretary." 25 U.S.C. § 81(b).[2] The Secretary's approval must be in the form of a "written approval." 25 C.F.R. § 162.604(a).

The Tribe reasons this action arises under federal law because the requirements of 25 U.S.C. § 415(a) and 25 C.F.R. § 162.604(a) govern the validity of Everglades' claims.[3] To state a valid cause of action for breach of contract, a plaintiff must establish three elements: "(1) a valid contract; (2) a material breach; and (3) damages." *Beck v. Lazard Freres & Co.*, 175 F.3d 913, 914 (11th Cir. 1999) (per curiam). The validity of the Lease is predicated on the Secretary's written approval. *Sangre de Cristo Dev. Co., Inc. v. United States*, 932 F.2d 891, 894 (10th Cir. 1991) (Section 415 requires a valid Secretarial approval in order for the lease contract to have legal effect); *see also Penobscot Indian Nation v. Key Bank of Maine*, 112 F.3d 538, 545 (1st Cir. 1997) ("Section 81 dictates that any agreement within its purview that is not approved by the Secretary of the Interior … is void *ab initio*.").[4] The Tribe argues that a court's determination of what constitutes valid "written approval" requires the interpretation and application of substantial federal law. Everglades disagrees and contends that its claims rely exclusively on

---

[2] According to the Supreme Court, the statute was "intended to protect the Indians from improvident and unconscionable contracts." *In re Sanborn*, 148 U.S. 222, 227 (1893).

[3] The provisions of 25 C.F.R. Part 162 "Leases and Permits," are incorporated by reference into Section 52 of the Lease.

[4] The Lease "shall not be valid or binding upon either party hereto until approved by [the Tribe] and the Secretary. Any modification of or amendment to this lease shall not be valid or binding upon either party hereto until approved in writing by [the Tribe] and the Secretary." (Business

5

state law and are solely within Florida's state court jurisdictional purview.

The majority of courts have held that Indian/non-Indian state-law contract disputes do not arise under federal law. *TTEA v. Ysleta Del Sur Pueblo, et al.*, 181 F.3d 676, 681 (5th Cir. 1999) ("federal courts do not have jurisdiction to entertain routine contract actions involving Indian tribes."); *Veeder v. Omaha Tribe of Nebraska*, 864 F. Supp. 889, 898 (N.D. Iowa 1994) ("court cannot exercise federal question jurisdiction simply because one of the parties is an Indian tribe and the case involves Indian property or contracts."); *Tamiami Partners, Ltd v. Miccosukee Tribe of Indians of Fla.*, 999 F.2d 503 (11th Cir. 1993) (same); *Jackson v. United States*, 485 F. Supp. 1243 (D. Alaska 1980) (holding that no federal jurisdiction arose from requirement of Secretarial approval of attorney contract pursuant to 25 U.S.C. § 81); *Niagra Mohawk Power Corp. v. Tonawanda Band of Seneca Indians*, 94 F.3d 747, 753 (2d Cir. 1996) (statutory requirement governing federal approval of franchise agreement does not give rise to a federal common law governing such contracts). However, this case is more than a simple contract dispute in that it involves Indian tribal land, which is exclusively regulated by federal law. *Bledsoe v. United States*, 349 F.2d 605, 607 (10th Cir. 1965).[5]

In the alternative, Everglades contends that the application of federal law is not necessary because the last page of the Lease contains the following language under the parties' signatures:

> APPROVED:
> U.S. DEPARTMENT OF THE INTERIOR, BUREAU OF INDIAN AFFAIRS,
> SEMINOLE AGENCY

In essence, Everglades asks this Court to interpret the Lease's printed language to be the required

---

Lease ¶ 37, ECF No. 1-1, Ex. A)
[5] The Lease provides that "[a]ny dispute arising out of or under this Lease shall be resolved first pursuant to the applicable federal law; second, pursuant to the applicable Florida law; and third, pursuant to the applicable laws of [the Tribe] if no state or federal law applies." (Business Lease ¶ 53(E)).

"written approval" within the meaning of 25 C.F.R. § 162.604(a).  Under the Administrative Procedure Act ("APA"), an agency's interpretation of its own regulations is controlling unless it is plainly erroneous or inconsistent with the regulations being interpreted.  *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 171 (2007).  "In other words, we must defer to the [agency's] interpretation unless an 'alternative reading is compelled by the regulation's plain language or by other indications of the [agency's] intent at the time of the regulation's promulgation.'"  *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994) (quoting *Gardenbring v. Jenkins*, 485 U.S. 415, 430 (1988)); *see also Martin v. Occupational Safety and Health Review Comm'n*, 499 U.S. 144, 150-51 (1991) (when the meaning of the regulatory language is ambiguous, the agency's interpretation of the regulation controls so long as the interpretation "sensibly conforms to the purpose and wording of the regulations.").

Originally named the "Office of Indian Affairs," the Bureau of Indian Affairs ("BIA"), as it is known today, was created in 1824 to implement the relocation of tribal communities in the Eastern and Midwestern United States to remote locations in the Louisiana Purchase territory.  *Cobell v. Babbitt*, 91 F. Supp. 2d 1, 7 (D. D.C. 1999).  The BIA's scope and purpose has evolved over the years as the agency is now "charged with fulfilling the trust obligations of the United States' to Indians." *Poafpybitty v. Skelly Oil Co.*, 390 U.S. 365, 374 (1968).  Indian lands are the most heavily regulated lands in the United States.  "The general purpose of the BIA regulations in the area of leasing Indian land … is to 'further fulfill the Secretary's fiduciary responsibility to federally-recognized tribes and Indian individuals.'"  *Saguaro Chevrolet, Inc. v. United States*, 77 Fed. Cl. 572 (Fed. Cl. 2007) (quoting Trust Management Reform: Leasing/Permitting, Grazing, Probate and Funds Held in Trust, 66 Fed. Reg. 7068 (Jan. 22, 2001).  Although tribes and tribal corporations have the authority to grant leases, 25 C.F.R. § 162.602(a), a lease is only

effective upon the approval of the Secretary of the Interior, *id.* § 162.604(a).[6] The approval process requires that the lease be limited in scope and purpose, *id.* § 162.103, be negotiated to the satisfaction of the BIA, *id.* § 162.605, and that the land use comply with environmental regulations, *id.* § 162.109(a); 42 U.S.C. § 4332(2)(C). A tribe can only negotiate a lease on the terms and forms dictated by the BIA. *Id.* § 162.604(g). Although the BIA will defer to a tribe's determination that a lease is in the tribe's best interest, *id.* § 162.107(a), a lease negotiated by a tribe cannot be terminated without Secretarial notice to the tenant, *id.* §§ 162.619, 162.621.

The Secretary's required written approval is consistent with Congress' intention to ensure that adequate consideration is given to the impact of leases on tribes, neighboring lands and the environment. *See Hollywood Mobile Estates, Ltd. v. Seminole Tribe of Fla.*, 641 F.3d 1259, 1268-69 (11th Cir. 2011); *see also Nulankeyutmonen Nkihtaqmikon v. Impson*, 503 F.3d 18, 29 (1st Cir. 2007). The clearest expression of congressional intent as to the definition of Secretarial approval appears in 25 U.S.C. § 2103, which contains a similar approval prerequisite. Under § 2103, the Secretary must prepare written findings forming the basis of his intent to approve or disapprove a mineral agreement. In its report on the then-pending version of the Indian Minerals Development Act, the Senate Select Committee on Indian Affairs noted that the purpose of the Secretarial report was to ensure "that tribes are fully apprised of the potential risks, as well as potential benefits. Having the opportunity to review the Secretary's findings in advance of a decision, tribes will have time to reassess and perhaps reconsider before final approval or disapproval." S. Rep. No. 97-472. 97th Cong., 2d Sess. 6 (1982). The regulations governing Indian land leases, as a whole, lead to the conclusion that the printed language on the Lease is

---

[6] The Secretary of the Interior may grant leases on individually owned land on behalf of Indians who have given the Secretary written authority to execute leases on their behalf. 25 C.F.R. § 162.601.

part of the standard leasing form required by the BIA, and does not serve as the requisite "written approval." *See* 25 U.S.C. § 162.604(g) (requiring all negotiated leases to be on standard BIA leasing forms).

In the alternative, Everglades argues that there is an ambiguity as to whether Secretarial approval is even necessary to enforce the terms of the Lease because the Lease provides that the Tribe "has full right and authority" to enter the Lease and perform its obligations under the Lease. Everglades' argument is in direct conflict with federal law. When a contract provision violates a statute, the language and purpose of the statute determines the enforceability of the contract. *See Sola Elec. Co. v. Jefferson Elec. Co.*, 317 U.S. 173, 176-77 (1942). "When the statute is federal, federal law determines not only whether the statute was violated but also, if so, and assuming the statute itself is silent on the matter, the effect of the violation on the enforceability of the contract." *Northern Indiana Pub. Serv. Co. v. Carbon Cnty. Coal Co.*, 799 F.2d 265, 273 (7th Cir. 1986). "[C]ontractual provisions made in contravention of a statute are void and unenforceable." *California v. United States*, 271 F.3d 1377, 1383 (Fed. Cir. 2001).

There can be no question that the governing statutes and regulations give elaborate powers to the Secretary of the Interior. Federal law also affords Indian tribes the right to be represented by a United States Attorney "in all suits at law and in equity." 25 U.S.C. § 175; *Siniscal v. United States*, 208 F.2d 406, 410 (9th Cir. 1953) (holding that 25 U.S.C. § 175 is not mandatory and that its purpose "is no more than to insure the Indians adequate representation in suites to which they might be parties."). Given the regulatory framework it naturally follows that Everglades' claims arise under federal law. Moreover, and most prevalent to this conclusion, is that "primary jurisdiction over land that is Indian country rests with the Federal government and

9

the tribe inhabiting it, and not with the States." *Alaska v. Native Village of Venetie Tribal Gov't, et al.*, 522 U.S. 520, 527 n.1 (1998).[7]

### 2. *Preemption*

Everglades argues that the Tribe's ground for removal is a federal question defense, which is not a valid ground for removal. Indeed, "[a] defense that raises a federal question is inadequate to invoke federal question jurisdiction." *Hill v. Marston*, 13 F.3d 1548, 1549 (11th Cir. 1994) (citing *Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 808 (1986)); *Jones v. LMR Intern., Inc.*, 457 F.3d 1174, 1178 (11th Cir. 2006) ("In determining whether federal jurisdiction exists [courts] apply the well-pleaded complaint rule, which requires [the court] to look to the face of the complaint rather than to defenses, for the existence of a federal question."). Even where a defendant raises a valid federal preemption defense, a case cannot be removed to federal court on the basis of that defense alone. *Geddes v. American Airlines, Inc.*, 321 F.3d 1349, 1352-53 (11th Cir. 2003); *see also Franchise Tax Bd.*, 463 U.S. 1, 25-28 (holding that ERISA preemption defense, without more, does not create removal jurisdiction)

"Preemption is the power of federal law to displace state law substantively." *Geddes*, 321 F.3d at 1352. "The federal preemptive power may be complete, providing a basis for jurisdiction in the federal courts, or it may be what has been called 'ordinary preemption,' providing a substantive defense to a state law action on the basis of federal law." *Id.*

---

[7] "[T]he term 'Indian country' … means (a) all land within the limits of any Indian reservation under the jurisdiction of the United States Government … (b) all dependent Indian communities within the borders of the United States whether within the original or subsequently acquired territory thereof, and whether within or without the limits of a state, and (c) all Indian allotments, the Indian titles to which have not been extinguished, including rights-of-way running through the same." 18 U.S.C. § 1151. "Although this definition by its terms relates only to federal criminal jurisdiction, [the Supreme Court has] recognized that it also generally applies to questions of civil jurisdiction such as the one at issue here." *Alaska v. Native Village of Venetie Tribal Government, et al.*, 522 U.S. 520, 527 (1998) (citing *DeCoteau v. District Cnty. for Tenth*

"[O]rdinary preemption may be invoked in both state and federal court as an affirmative defense to the allegations in a plaintiff's complaint." *Id.* "Such a defense asserts that the state claims have been substantively displaced by federal law." *Id.* (citing *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987)). Complete preemption, however, is distinct from ordinary preemption in that it "functions as a narrowly drawn means of assessing federal removal jurisdiction." *Blab T.V. of Mobile, Inc. v. Comcast Cable Commc'ns, Inc.*, 182 F.3d 851, 854 (11th Cir. 1999). Compete preemption "looks beyond the complaint to determine if the suit is, in reality, 'purely a creature of federal law,' even if state law would provide a cause of action in the absence of federal law." *Geddes*, 321 F.3d at 1353. Federal law may preempt state law in three ways. "First, in enacting the federal law, Congress may explicitly define the extent to which it intends to pre-empt state law." *Michigan Canners and Freezers Ass'n. Inc. v. Agric. Mktg. and Bargaining Bd.*, 467 U.S. 461, 469 (1984). "Second, even in the absence of express pre-emptive language, Congress may indicate an intent to occupy an entire field of regulation, in which case the States must leave all regulatory activity in that area to the Federal Government." *Id.* "Finally, if Congress has not displaced state regulation entirely, it may nonetheless pre-empt state law to the extent that the state law actually conflicts with federal law." *Id.* "Such conflict arises when compliance with both state and federal law is impossible, or when the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* (internal citations and quotations omitted). The complete preemption analysis requires a court to determine "whether Congress not only intended for a federal statute to provide a defense to state-law claims, but also intended to confer on defendants the ability to remove a case to a federal forum." *Anderson v. H&R Block, Inc.*, 287 F.3d 1038, 1041 (11th Cir. 2002).

---

*Judicial Dist.*, 420 U.S. 425, 427 n.2 (1975).

Congress has broad power to regulate Indian affairs under the Indian Commerce Clause, Art. 1, § 8, cl. 3.  This congressional authority, along with the quasi-sovereign status of Indian tribes

> have given rise to two independent but related barriers to the assertion of state regulatory authority over tribal reservations and members.  First, the exercise of such authority may be preempted by federal law.  Second, it may unlawfully infringe on the right of reservation Indians to make their own laws and be ruled by them.  The two barriers are independent because either, standing alone, can be a sufficient basis for holding state law inapplicable to activity undertaken on the reservation or by tribal members.

*White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 140 (1980) (internal citations and quotations omitted); *see also Coosewoon v. Meridian Oil Co.*, 25 F.3d 920, 927 (10th Cir. 1994). Thus, the preemption analysis applies a set of principles unique to Indian cases.  *Id.*  The Supreme Court has instructed courts to engage in "a particularilized inquiry into the nature of the state, federal, and tribal interests at stake."  *Id.* at 145.  The inquiry must be "designed to determine whether, in the specific context, the exercise of state authority would violate federal law." *Id.*  The inquiry must also focus on an examination of "the language of the relevant federal treaties and statutes in terms of both the broad policies that underlie them and the notions of sovereignty that have developed from historical traditions of tribal independence." *Id.* at 144-45. "State jurisdiction is preempted by the operation of federal law if it interferes or is incompatible with federal and tribal interests reflected in federal law, unless the state interests at stake are sufficient to justify the [application of the state law]." *Coosewoon*, 25 F.3d at 927 (quoting *New Mexico v. Mescalero Apache Tribe*, 462 U.S. 324, 334 (1983)).  Applying these principles, I find that Everglades' attempt to require the Tribe to strictly comply with state breach of contract law is incompatible and interferes with the Secretary of the Interior's interests in enforcing the provisions of the ILTLA.  Given the pervasive federal regulation concerning Indian reservation

12

land leases, which protects Indian interests, and the lack of any state interests justifying the application of state law, Everglades' claims are preempted.

## B. Subject Matter Jurisdiction

The Tribe moves to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) on the ground that this Court lacks subject matter jurisdiction.[8] The Tribe maintains that it is immune from this lawsuit by virtue of its sovereign status as a federally recognized Indian tribe, and that it never validly waived its sovereign immunity because the Secretary of the Interior never approved the Lease.[9] The Tribe also argues that dismissal is proper under Rule 12(b)(6) because Secretarial approval is a condition precedent to the Lease's validity and therefore, by its terms, the Lease is void *ab intio*.

As a matter of Federal law, Indian tribes enjoy common-law immunity from suit in state and federal court by virtue of their sovereign status. *Kiowa Tribe v. Mfg. Tech., Inc.*, 523 U.S. 751, 754 (1995) (citing *Three Affiliated Tribes of Fort Berthold Reservation v. Wold Eng'g*, 476 U.S. 877, 890 (1986)); *Sanderlin v. Seminole Tribe of Florida*, 243 F.3d 1282, 1285 (11th Cir. 2001). "Sovereign immunity is jurisdictional in nature." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475

---

[8] An attack on subject matter jurisdiction under Rule 12(b)(1) can be either a facial or factual attack. *Lawrence v. Dunbar*, 919 F.2d 1225, 1528 (11th Cir. 1990). "Facial attacks" on the complaint 'require the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction and the allegations of his complaint are taken as true for the purposes of the motion.'" *Id.* at 1529 (citing *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 19800). In the other hand, factual attacks "challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Id.* Since a factual attack challenges "the trial court's jurisdiction – its very power to hear the case – there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to existence of its power to hear the case." *Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir. 2003).

[9] The Lease contains a limited waiver of sovereign immunity. (Business Lease ¶ 53). The validity of the Tribe's waiver of immunity is contingent upon the validity of the Lease.

(1994). "[A]n Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity." *Kiowa Tribe*, 523 U.S. at 754.  A waiver of sovereign immunity "cannot be implied but must be unequivocally expressed." *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978) (quoting *United States v Testan*, 424 U.S. 392, 399 (1976)).  "[B]ecause of the peculiar 'quasi-sovereign' status of the Indian tribes, the Tribe's immunity is not congruent with that which the Federal Government, or the States, enjoy." *Wold Eng'g*, 476 U.S. at 890. Tribal immunity is broader than that of the United States in that tribal governments retain sovereign immunity even when they conduct commercial business, both on and off reservations.[10]

Restricted Indian land may only be leased with the Secretary of the Interior's written approval. *See* 25 U.S.C. § 415 and 25 C.F.R. § 162.604(a).  On its face, the Complaint compels the conclusion that the Secretary of the Interior did not approve the Lease.  The National Environmental Policy Act directs all federal agencies to prepare an environmental impact statement for all "major Federal actions significantly affecting the quality of the human environment."  42 U.S.C. § 4332(2)(C).  Secretarial approval of leases on federal lands "constitutes major federal action and thus must be approved according to NEPA mandates." *Davis v. Morton*, 469 F.2d 593, 597 (10th Cir. 1972).  Accordingly, the NEPA regulations apply to the Lease at issue. *See id.*  The Act mandates that the environmental impact statement "be prepared early enough so that it can serve practically as an important contribution to the [decision making] process and will not be used to rationalize or justify decisions already made." 42 C.F.R. § 1502.5.  Everglades claims that the Secretary approved the Lease before it was

---

[10] Tribal immunity extends to "entities that are arms of the tribes" but apparently not to "tribally chartered corporations that are completely independent of the tribe." *Cohen's Handbook of Federal Indian Law*, 7.05(1)(a).

executed on November 28, 2008. This is contrary to the federal environmental regulations governing the Lease. Everglades completed the environmental assessment in July 2010, nearly two years after the Tribe granted the Lease. The federal regulations mandate that environmental assessments be taken into consideration *before* Secretarial approval. Logically, it therefore follows that the Lease was not approved in 2008. The lack of approval ultimately gave the Tribe the right to rescind the Lease, with or without notice to Everglades. *See Quantum Exploration, Inc. v. Clark*, 780 F.2d 1457, 1460 (9th Cir. 1986) (a tribe has the right to rescind a lease agreement prior to Secretarial approval); *see also* 25 C.F.R. 162.619 (Secretary has sole authority to terminate an approved lease agreement).

Notwithstanding the lack of approval, however, Everglades argues that the Tribe should be estopped from asserting the lack of Secretarial approval as a defense because the Tribe made oral representations that the requisite approval had been obtained prior to executing the Lease. Specifically, Everglades contends that the Tribe advised Everglades that the NEPA environmental assessment process would be triggered once the BIA approved the Lease.[11] In order to state a claim for estoppel, the party claiming estoppel must show (1) another person made a definite misrepresentation of fact to the party, (2) the party reasonably relied on that representation, and (3) the party seeking estoppel changed his position to his detriment based on the reliance on the representation. *Heckler v. Comty. Health Serv. of Crawford Cnty., Inc.*, 467 U.S. 51, 59 (1984); *Zurich Am. Ins. Co. v. Frankel Enter.*, 287 Fed. App'x 775, 779 (11th Cir.

---

[11] The Court notes that the Lease expressly disclaims any reliance Everglades may have on the Tribe's representations. "[A]ll of the representations, warranties, covenants, undertakings and agreements herein made on the part of [the Tribe] while in from purporting to be the representations, warranties, undertakings and agreements of [the Tribe] are nevertheless each and every one of them made and intended not as personal representations, warranties, covenants, undertakings and agreements by [the Tribe] nor for the purpose nor with the intention of binding

2008) (citing *Watson Clinic, LLP v. Verzosa*, 816 So. 2d 832, 834 (Fla. Dist. Ct. App. 2002)). When a party relies on another's misrepresentation, "that reliance must have been reasonable in that the party claiming the estoppel did not know or should it have known that its adversary's conduct was misleading." *Heckler*, 467 U.S. at 59. Reliance is not reasonable if the person induced to act has access to the truth.

> If, at the time he acted, such party had knowledge of the truth, or had the means by which with reasonable diligence he could acquire the knowledge so that it would be negligence on his part to remain ignorant by not using those means, he cannot claim to have been misled by relying upon the representation or concealment.

*Id.* Everglades could have easily discovered that the Lease had not been approved by reviewing the governing procedural regulations, contacting the Secretary of the Interior, or by asking the Tribe for proof of the Secretary's approval. Everglades did not exercise "reasonable diligence," and thus negligently remained ignorant of the Lease's invalidity. Even assuming, *arguendo*, that Everglades did reasonably rely on the Tribes alleged representations, equitable contract principles do not apply to the contract dispute at issue. *A.K. Mgmt. Co. v. San Manuel Band of Mission Indians*, 789 F.2d 785 (9th Cir. 1986) (general contract principles do not apply to Indian/non-Indian contract disputes where contract is void due to lack of Secretarial approval); *see also U.S. ex rel. Citizen Band Patawatomi Indian Tribe of Oklahoma v. Enter. Mgmt. Consultants, Inc.*, 883 F.2d 886, 890 (10th Cir. 1989).

## CONCLUSION

The Lease is void *ab initio*. It therefore follows that the Tribe did not waive its sovereign immunity. For that same reason, the Complaint fails to state a cause of action for breach of contract or specific performance. Accordingly, it is **ORDERED and ADJUDGED** that the

---

[the Tribe] personally." (Business Lease ¶ 23).

Motion to Remand (ECF No. 16) is **DENIED** and the Motion to Dismiss (ECF No. 6) is **GRANTED**. The Clerk is directed to **CLOSE** this case. All pending motions, if any, are **DENIED** *as moot*.

**DONE and ORDERED** in chambers, at Miami, Florida, this 22nd day of December 2011.

_____
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*William C. Turnoff, U.S. Magistrate Judge*
*Counsel of record*